UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLTON BROWN,

                Plaintiff,

v.

THOMAS GRIFFIN, *et al.*,

                Defendants.

No. 18-CV-5439 (KMK)

OPINION & ORDER

Appearances:

Carlton Brown
Stormville, NY
*Pro Se Plaintiff*

Colleen Kelly Faherty, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Carlton Brown ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven"), brings this pro se Action against several officials at Green Haven: Thomas Griffin ("Griffin"), J. Lamanna ("Lamanna"), D. Howard ("Howard"), M. Kopp ("Kopp"), and A. Smith-Roberts ("Smith-Roberts") (collectively, "Defendants"). The Court construes the Amended Complaint to allege violations of Plaintiff's First Amendment and Equal Protection rights under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the New York State Constitution. (*See generally* Am. Compl. (Dkt. No. 18).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem") (Dkt. Nos. 25, 26).) For the reasons stated herein, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and exhibits referenced therein and are taken as true for the purpose of resolving the instant Motion.[1]

Plaintiff alleges that he is a "third degree high priest in the Wicca religion and has been a practicing Wiccan for [seventeen] years."  (Am. Compl. 5.)[2]  He also claims to be a "state registered Wiccan since 2009."  (*Id.*)  Since Plaintiff's arrival at Green Haven on or about November 3, 2016, Plaintiff has been attempting to establish and grow services and accommodations for the Wicca religion there.  (*Id.*; *see generally* Am. Compl.)

Plaintiff alleges that, at the time of his arrival, Green Haven did not offer any religious services or classes for Wiccans.  (*Id.*)  After he wrote to the coordinating chaplain, Plaintiff alleges that he was "given unofficial permission" by Deacon Buckner and Defendant Howard to create religious services and classes for Wiccans at Green Haven.  (*Id.*)  Plaintiff alleges that

---

[1] Plaintiff refers to certain exhibits throughout his Amended Complaint, although he did not attach them.  Plaintiff later attached those exhibits to his Opposition to the Motion.  (*See generally* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 27).)  Thus, the Court may consider them.  *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (noting that a district court may consider "documents appended to the complaint or incorporated in the complaint by reference" (citation omitted)).  Plaintiff also refers to the Department of Corrections and Community Supervision ("DOCCS") Directive 4202 (the "Directive"), concerning religious programs and practices within DOCCS facilities, throughout his Amended Complaint.  (*See generally* Am. Compl.)  Defendants attached a copy of the Directive to their Motion.  (*See* Defs.' Mem. Ex. A. (Dkt. No. 26).)  The Court will take judicial notice of the Directive as Plaintiff's Complaint "relies heavily upon its terms and effect," making the document "integral to the [C]omplaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted); *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *5 n.3 (S.D.N.Y. Feb. 14, 2018) (taking judicial notice of the content of the Directive); *Morse v. Annucci*, No. 13-CV-1354, 2015 WL 5725046, at *8 (N.D.N.Y. Sept. 29, 2015) (same).

[2] For Plaintiff's filings, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

DOCCS approved the observations of Wiccan holidays. (*Id*. at 6.) Subsequently, Plaintiff and the other Wiccans at Green Haven were given a room and two days of the week—Monday and Wednesday—to use for services and classes. (*Id.* at 7.) Plaintiff notes that there are approximately five to eight Wiccan individuals at Green Haven. (*Id.* at 11.)

Despite the approval of regular religious services, Plaintiff continued to file several grievances and complaints regarding his ability to fully practice his faith, many of which Plaintiff alleges that Defendants either ignored or rejected. (*See generally id*.) For example, Plaintiff alleges that Howard created a religious calendar that permitted Wiccans at Green Haven to celebrate four out of eight holy days. (*Id.* at 6.) Plaintiff inquired why he was not allowed to celebrate the remaining four holy days, but allegedly received no response. (*Id*.) Plaintiff similarly allegedly received no response to a request to hold a Saturday evening meeting to practice a rite called "Magickal Working" until a year later. (*Id*.) In March 2017, Plaintiff wrote to Griffin, requesting permission to have additional religious meetings during days with a full moon or new moon, to which Griffin allegedly did not respond. (*Id.* at 9.) Plaintiff alleges that Griffin instead forwarded his complaints to Howard, who told Plaintiff that he would not approve of any more days for services or classes for the Wiccan group. (*Id.* at 9, 16–17.) Plaintiff complained about the rejection, pointing out to Howard and Griffin that multiple religious groups, like Muslims or certain Christian sects, were allowed to meet more than twice a week. (*Id.* at 9–10.) In May 2017, Plaintiff wrote to Kopp, who was serving as Deputy Superintendent of Programs at the time, requesting supplies such as paper, pens, pencils, tape, and folders for the religious classes, to which Kopp allegedly did not respond. (*Id*. at 6, 18.) Kopp allegedly ignored similar requests from Plaintiff asking to be named the "clerk" of the Wiccan Faith Group at Green Haven and requesting office space for the group. (*Id.* at 18–19.)

In March and April 2018, Plaintiff sent another grievance about his dissatisfaction with accommodation for Wiccans to Lamanna, who allegedly did not respond. (*Id.* at 14–15.) In April and May 2018, Plaintiff wrote to Kopp again, complaining that, in addition to not being given office space or supplies, there were also some "missing funds" from the Wiccans' account and that they "were not able to worship on the assigned night[s] because of the heavy traffic throughout the area." (*Id.* at 19–20.)

With regard to Smith-Roberts, the DOCCS Director of Ministerial Services, Plaintiff alleges that he submitted a complaint in August 2017 regarding his experiences as a Wiccan at Green Haven and that Smith-Roberts' response did "not cure[]" Plaintiff's grievances. (*Id.* at 21–22.)

Based on the above facts, Plaintiff requests injunctive relief and punitive damages against Defendants, along with a declaratory judgment that Defendants' actions have violated Plaintiff's rights under the U.S. Constitution, RLUIPA, and the New York State Constitution. (*Id.* at 22–23.)

B.  Procedural Background

On June 15, 2018, Plaintiff filed his Complaint and Request to Proceed In Forma Pauperis ("IFP"). (Dkt. Nos. 1, 2.) On July 30, 2018, the Court granted Plaintiff IFP status. (Dkt. No. 7.) On August 7, 2018, the Court issued an Order of Service on Defendants. (Dkt. No. 9.) Pursuant to the Court's Order of Service, Defendants' counsel provided the Court with the identity of Smith-Roberts, who was named as a John Doe Defendant in Plaintiff's original Complaint. (Dkt. No. 16.) Plaintiff accordingly filed the operative Amended Complaint naming Smith-Roberts. (Am. Compl.) On December 28, 2018, Defendants filed their Motion. (Not. of Mot.; Defs.' Mem.) On January 17, 2019, Plaintiff filed his Opposition. (Pl.'s Mem.) On

February 19, 2019, Defendants filed their Reply. (Defs.' Reply in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 31).)

## II. Discussion

Defendants argue that Plaintiff fails to state a claim for relief under either RLUIPA or the First Amendment, (Defs.' Mem. 5–12), that Plaintiff fails to state a claim for relief under the Equal Protection Clause, (*id*. at 12–15), that Plaintiff fails to plausibly allege the personal involvement of any Defendant, (*id*. at. 15–19), that the Eleventh Amendment bars Plaintiff's claims for damages against Defendants sued in their official capacity, (*id*. at 20), that Plaintiff's request for declaratory relief should be dismissed because there is no underlying violation of law, (*id*. at 20–21), that Plaintiff's state law claims should be dismissed (*id*. at 21), and that Defendants are entitled to qualified immunity, (*id*. at. 21–24). The Court will address the arguments as needed.

### A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

### B. Analysis

#### 1. Equal Protection Claim

Plaintiff refers to the Equal Protection Clause throughout his Amended Complaint, and the Court liberally interprets that to mean that Plaintiff alleges that Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. (*See generally* Am. Compl.)

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]o assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with similarly situated individuals,' and (2) 'that such selective treatment was based on

7

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)). This requires a showing of "discriminatory intent or purpose." *Vill. of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (holding that a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" (citation omitted)); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding that a plaintiff "must prove purposeful discrimination, directed at an identifiable or suspect class" (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988))).

Where there is no allegation of membership in a protected class, the plaintiff may still prevail on either a "class of one" or "selective enforcement" theory. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013). A "class-of-one" claim requires the plaintiff allege that he was "[1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). That is, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (citation and quotation marks omitted). A class-of-one plaintiff must show "an extremely high degree of similarity between

8

[himself] and the persons to whom [he] compare[s] [himself]." *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation and quotation marks omitted); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (noting that a class-of-one plaintiff "must identify comparators whom a prudent person would think were roughly equivalent," although he "need not show an exact correlation between [himself] and the comparators" (citation and quotation marks omitted)).

A "selective enforcement" claim requires the plaintiff show both (1) that "he, compared with others similarly situated, was selectively treated," and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Vaher*, 916 F. Supp. 2d at 433 (citation, quotation marks, and alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). Although "there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory," with "some courts evaluat[ing] whether a comparator is similarly situated under the same standard used in 'class of one' equal protection claims" and other courts "apply[ing] a less demanding standard to selective enforcement claims," *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y. 2017) (citations omitted) (collecting cases), *aff'd*, 705 F. App'x 50 (2d Cir. 2017), it is clear that, at a minimum, some showing of comparison with others similarly situated is required.

Here, Plaintiff fails to plausibly allege that the Wiccans are similarly situated to other religious groups that Plaintiff uses as comparators, which include Muslims, Catholics, Protestants, Quakers, and Jehovah's Witnesses. (Am. Compl. 10.) Although "reasonable opportunities must be afforded to all prisoners to exercise [] religious freedom," not "every

9

religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Plaintiff himself acknowledges that there are only five to eight Wiccans at Green Haven. (Am. Compl. 11.) In contrast, Plaintiff notes that the other, more "conventional" religions, some of which are permitted to congregate more than twice a week and may have office spaces, have "numbers in the hundreds." (*Id.* at 13.) "The number of inmates adhering to a particular religious group and whether that group requires distinct accommodations are material traits in assessing whether inmates are similarly situated under DOCCS' registration policy." *Jones*, 2018 WL 910594, at *17 (citing *Cruz*, 405 U.S. at 322 n.2); *see also Graham v. Mahmood*, No. 05-CV-10071, 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008) (explaining that groups of 39 Nation of Islam adherents and 119 Sunni Muslim inmates were "not similarly situated" because "the two groups have different needs for access to meeting spaces and time slots"). No other allegations in the Amended Complaint plausibly establish how the Wiccans are similarly situated to the other cited religious groups. Accordingly, Plaintiff's claims under the Equal Protection Clause are dismissed. *See Jones*, 2018 WL 910594, at *17–18 (dismissing Equal Protection claim where plaintiff failed to plausibly allege that adherents to the Shiite sect of Islam were similarly situated, among other ways, in size, to other comparator religions and sects).

2. Free Exercise and RLUIPA Claims

Plaintiff refers to the First Amendment and RLUIPA throughout his Amended Complaint, and the Court liberally interprets that to mean that Plaintiff alleges that Defendants violated Plaintiff's rights under the Free Exercise Clause of the First Amendment and under RLUIPA. (*See generally* Am. Compl.)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352

10

F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). A prisoner's free exercise rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Id*. (citation and quotation marks omitted). Accordingly, a prisoner's free exercise claims are "judged under a 'reasonableness' test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (citation and some quotation marks omitted). To state a free exercise claim, an inmate "must make a threshold showing that 'the disputed conduct substantially burdened his sincerely held religious beliefs.'" *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alterations omitted) (quoting *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (same). To show a belief is "sincere," the inmate "need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (citations, alterations, and quotation marks omitted). To show a "substantial burden," the inmate must show that "the state [has] put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (citations and quotation marks omitted). That is, "[t]he relevant question in determining whether [the inmate's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the inmate's religious] practice." *Ford*, 352 F.3d at 593–94. "Once [an inmate] establishes this burden, '[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (quoting *Salahuddin*, 467 F.3d at 275). The burden then shifts back to the inmate "to show

11

that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (citation, quotation marks, and alteration omitted).

RLUIPA, in turn, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion," *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005), and "provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest," *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citation, alterations, and quotation marks omitted); *see also Salahuddin*, 467 F.3d at 273 (same) (citing 42 U.S.C. § 2000cc–1(a))). While "RLUIPA does not define 'substantial burden,' . . . the Second Circuit has assumed that '[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence[,] . . . Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it." *Panayoty v. Annucci*, 898 F. Supp. 2d 469, 481–82 (N.D.N.Y. 2012) (quoting *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007)). "[A] substantial burden is one that 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 482 (alterations omitted) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981)). Whether a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment. *See Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *12 (S.D.N.Y. Sept. 3, 2013), *adopted by* 2014 WL 2767201 (S.D.N.Y. June 17, 2014). "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the

government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest." *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (citing 42 U.S.C. § 2000cc–2(b)).

To begin, Plaintiff sued Defendants in both their individual and official capacities. "RLUIPA does not provide a cause of action against state officials in their individual capacities," *Gonyea*, 731 F.3d at 145, and the Supreme Court has held that RLUIPA does not abrogate state sovereign immunity against suits for money damages, *see Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011) (holding that "RLUIPA's authorization of 'appropriate relief against a government,' is not the unequivocal expression of state consent that our precedents require," and that "'[a]ppropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit" (citations omitted)). Accordingly, Plaintiff's RLUIPA damages claims and any RLUIPA claims against Defendants in their individual capacities are dismissed with prejudice.

Defendants have not at this stage contested that Plaintiff's Wiccan beliefs are sincerely held. Thus, for the purposes of this Opinion, the Court assumes that Plaintiff's religious beliefs are sincere and examines only whether Plaintiff has plausibly alleged that his beliefs were substantially burdened by Defendants' conduct.

Here, under either the First Amendment or RLUIPA, Plaintiff has failed to plausibly allege that Plaintiff's rights to practice his religion have been substantially burdened. Importantly, "mere inconvenience to the adherent" alone "is insufficient to establish a substantial burden." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citation, quotation marks, and alterations omitted). By Plaintiff's own allegations, Wiccans at Green Haven, including Plaintiff, have been permitted to observe religious holidays and have been given two days a week

to participate in regular classes or services. (Am. Compl. 6–7.) Plaintiff's allegations pertain to Wiccans' difficulty obtaining supplies, office space, or additional days of worship beyond the two days per week of allotted religious services. None of these allegations plausibly amounts to more than an inconvenience, at least without an explanation as to the impact of these allegations on Plaintiffs' conduct. For example, Plaintiff fails to plausibly allege how, if at all, Plaintiff was obligated "to modify his behavior and to violate his beliefs" as a result of the Defendants' actions. *See Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *6 (S.D.N.Y. Feb. 2, 2017) (citing *Panayoty*, 898 F. Supp. 2d at 481–82). The allegation that Plaintiff was not permitted to observe all the holy days he wished to observe also does not alone plausibly state a substantial burden. *See Graham*, 2008 WL 1849167, at *14 ("[B]eing limited to one weekly [Nation of Islam] meeting at a pre-arranged time[] does not constrain [the] plaintiff's ability to remain a devout follower of his faith." (citations omitted)); *Muhammad v. City of N.Y. Dep't of Corrs.*, 904 F. Supp. 161, 190–91 (S.D.N.Y. 1995) (holding that prison staff's refusal to hold any Nation of Islam congregational services was not a "substantial burden").

Accordingly, Plaintiff's claims under the Free Exercise Clause and RLUIPA are dismissed. *See Lombardo v. Freebern*, No. 16-CV-7146, 2019 WL 1129490, at *7–10 (S.D.N.Y. Mar. 12, 2019) (holding, inter alia, that the plaintiff failed to allege that his free exercise rights were substantially burdened when he was denied access to religious items); *Jackson v. Goord*, No. 06-CV-6172, 2011 WL 4829850, at *13 (W.D.N.Y. Oct, 12, 2011) (same); *Muhammad*, 904 F. Supp. at 189–93 (holding that plaintiff's religious beliefs were not substantially burdened where, inter alia, DOCCS did not offer congregate services or employ a sect-specific minister

and otherwise "did not coerce or pressure plaintiff into committing acts forbidden by his religion or prevent him from engaging in conduct that is mandated by his faith").[3,4]

### 3. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F. 3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (italics and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits,

---

[3] Because the Court dismisses Plaintiff's First Amendment Claims on their merits, the Court does not address the question of qualified immunity as to any Defendants or personal involvement as to Kopp, Howard, and Smith-Roberts. The Court dismisses the § 1983 claims against Griffin and Lamanna on the additional grounds of personal involvement, as discussed below in Section II.B.3.

[4] Plaintiff also refers to the Establishment Clause throughout his Amended Complaint. (*See generally* Am. Compl.) To the extent that Plaintiff intended to allege another set of claims against Defendants based on the Establishment Clause, they are also dismissed. It is well settled that prison officials are required to engage in "some entanglement" to satisfy their obligations under the Free Exercise Clause. *Ramrattan v. Fischer*, No. 13-CV-6890, 2015 WL 3604242, at *8 (S.D.N.Y. June 9, 2015) (citation and alteration omitted). Plaintiff alleges no facts beyond the ones that form the basis of his Free Exercise claim for any claim under the Establishment Clause. *See Jackson v. Mann*, 196 F.3d 316, 321 (2d Cir. 1999) (dismissing Establishment Clause claims that fail to allege any facts beyond the Free Exercise claims because the "argument is more properly anchored in the Free Exercise Clause." (citation omitted)).

15

a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

With regard to Griffin and Lamanna, the Court agrees with the Defendants that Plaintiff's Amended Complaint insufficiently alleges personal involvement under 42 U.S.C. § 1983. (*See* Defs.' Mem. 15.) As to Griffin, the Superintendent of Green Haven at the time the relevant incidents occurred, Plaintiff alleges only that he sent a letter to Griffin asking to observe additional religious service days per week and that Griffin referred the issue to Howard, the Deputy Superintendent, who denied the request. (Am. Compl. 2–3, 9.) However, "[a] supervisory official is not deemed to have been personally involved in a constitutional violation solely by virtue of having received a letter . . . from a prisoner and having referred it to the appropriate department for investigation." *Philip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *5 (S.D.N.Y. Aug. 22, 2014) (collecting cases); *see also Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997))). Additionally, "receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement." *See Jones v. Fischer*, No. 11-CV-774, 2013 WL 4039377, at *10 (N.D.N.Y. Aug. 7, 2013) (collecting cases).

As to Lamanna, Plaintiff alleges only that he sent Lamanna grievances and letters requesting additional religious service days per week and that Plaintiff subsequently did not receive a response or a corresponding accommodation. (*See* Am. Compl. 14–15.) This fails to plausibly allege personal involvement because "it is well-established that an allegation that" a

16

supervisory "official ignored a prisoner's letter of protest . . . is insufficient to hold that officer liable for the alleged violations." *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (alterations and quotation marks omitted) (collecting cases); *see also Dawkins v. Copeland*, No. 17-CV-9926, 2019 WL 1437049, at *8 (S.D.N.Y. Mar. 31, 2019) ("[A] defendant's mere receipt of a grievance is insufficient to show [his] personal involvement in a constitutional deprivation." (citation omitted)). Accordingly, the claims against Griffin and Lamanna are dismissed.

### 4. Declaratory Judgment

Because Plaintiff's federal claims are dismissed, there is no remaining jurisdiction for Plaintiff's request for declaratory relief. Accordingly, Plaintiff's declaratory judgment claim is also dismissed. "The Declaratory Judgment Act provides only a federal remedy, not a federal claim, so it can only be applied in cases in which there is an independent basis for the exercise of federal subject matter jurisdiction," all of which have been dismissed in the present case. *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-CV-3199, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005); *see also Campaniello v. N.Y. State Dep't of Taxation and Fin.*, No. 16-CV-8989, 2017 WL 3242330, at *4 (S.D.N.Y. July 27, 2017) (automatically dismissing declaratory judgment claim where dismissal of other claims destroyed federal subject-matter jurisdiction); *Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d 595, 604 (S.D.N.Y. 2003) (same).

### 5. State Constitutional Claims

Throughout the Amended Complaint, Plaintiff refers to alleged violations of his rights under the New York State Constitution. (*See generally* Am. Compl.) Plaintiff's request for monetary relief is barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to

17

perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Corr. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court). It is "well settled that [§] 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco*, 119 F.3d 183, 186 (2d Cir. 1997). Defendants clearly acted within the scope of their employment, as their actions as alleged in the Amended Complaint "arose as a result of [their] discharging their duties as correctional officers." *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994). Further, "there is no private right of action under the New York State Constitution . . . where remedies are available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (citation omitted). Therefore, any damages claims under the New York Constitution are dismissed with prejudice. Further, all of Plaintiff's state constitution claims are duplicative of his federal claims, and accordingly, any state law claims seeking injunctive relief are dismissed without prejudice. *See Cianfano v. Village of Tuckahoe*, No. 18-CV-7882, 2019 WL 3456887, at *7 (S.D.N.Y. July 31, 2019) (dismissing plaintiff's claims under New York Constitution where they were duplicative of his federal claims).[5]

---

[5] Alternatively, because Plaintiff's federal claims have all been dismissed, the Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over any state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." (citation omitted)); *Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (holding that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims where all claims over which it had original jurisdiction were dismissed); *Sadallah v. City of Utica*, 383 F.3d 34, 39–40 (2d Cir. 2004) (directing district court to enter judgment on federal law claims and to "dismiss any state law claims without prejudice" (citing *Gibbs*, 383 U.S. at 726)).

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Plaintiff's damages claims under the New York State Constitution and under RLUIPA are dismissed with prejudice. Because this is the first adjudication of Plaintiff's claims, the dismissal of Plaintiff's other claims is without prejudice.

If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, all prior complaints. The second amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (Dkt. No. 25), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September 25, 2019
        White Plains, New York

KENNETH M. KARAS
United States District Judge